**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,          :
                           :
                           :        ID No. 2203013232

        v.                :
                           :

MARCUS BAILEY,            :
                           :
                           :

        Defendant.      :

Submitted: March 18, 2024
Decided:  March 27, 2024

## **ORDER**

On this 27th day of March 2024, having heard and considered Defendant Marcus Bailey's motion to suppress, his amended motion seeking an evidentiary reverse-*Franks* hearing, and the State's opposition to both, it appears that:

1.     The State alleges that Mr. Bailey committed Murder First Degree when he allegedly shot and killed Bruce Wright on March 24, 2022. Mr. Bailey allegedly entered the rear driver's-side seat of Mr. Wright's parked car, spoke to Mr. Wright, demanded drugs, and then fatally shot him once in the head before exiting the vehicle. Presently, Mr. Bailey challenges the sufficiency of the warrant that authorized the seizure of his DNA to compare to samples that the police recovered during the State's investigation.

2.     In Mr. Bailey's initial filing, he focused primarily on the facts contained within the four corners of the probable cause affidavit.[1] At the outset,

---

[1] Def.'s Mot. to Suppress (Jan. 4, 2024).

he contended that the facts recited in the affidavit were insufficient to demonstrate the probable cause necessary to justify the seizure. His original motion also contested the veracity/completeness of a representation that the attesting detective included in the affidavit. Namely, although the detective recited that the police recovered numerous DNA samples from the rear seat of the vehicle from which Mr. Bailey committed the murder, the detective failed to include the fact that Mr. Wright's blood was heavily splattered about the vehicle. Mr. Bailey contends that this omission misled the magistrate who issued the warrant.

3.     At the oral argument on the initial motion, he did not contest that the warrant, taken at face value, justified seizing his DNA. After all, the affidavit specifically alleged that the police recovered numerous DNA samples from the vehicle's back seat, where Mr. Bailey allegedly pulled the trigger.[2] Instead, Mr. Bailey focused on whether the detective recklessly misled the reviewing magistrate by omitting critical details that he should have included in the affidavit.

4.     Mr. Bailey's original motion did not justify considering facts from outside of the warrant's four corners. Superior Court Criminal Rule 41(f) provides that:

> the court shall not receive evidence on motions challenging . . . the veracity of a sworn statement used to procure a search warrant unless the motions are supported by affidavits, or their absence is

---

[2]   The Court's analysis in this case, whether it based upon the four corners of the affidavit or after the reverse-*Frank*s hearing discussed *infra*, requires a showing of a nexus between the seized evidence (here, Mr. Bailey's DNA) and samples or likely recovered samples from the crime scene. Namely, to demonstrate such a nexus, the warrant must demonstrate that either (1) the police recovered a DNA sample from a location or object occupied or used by the suspect, **or** (2) there is a fair probability that the seized sample of an individual's DNA will be recovered and can be linked to a crime. *State v. White,* 2017 WL 1842784, at *5 (Del. Super. May 8, 2017). Here, the affidavit recites that the police recovered multiple DNA samples from the vehicle. Taking that at face value satisfied alternative (1) above and establishes the required nexus – that is a demonstration that there was something recovered to compare to Mr. Bailey's DNA.

satisfactorily explained in the motion and the allegedly false statement is necessary to the finding of probable cause.

Mr. Bailey's original motion included no affidavit. Nor did it satisfactorily explain the absence of one. Moreover, it did not request an evidentiary hearing. Accordingly, the Court declined to open the record to receive extrinsic evidence based upon Mr. Bailey's original filing.

5. Nevertheless, his original filing included pictures of the scene with his original motion and referenced facts that were not mentioned in the affidavit. In fairness, his motion drew attention to matters outside the four corners of the affidavit and raised at least a credible issue. Accordingly, the Court permitted him to file an amend motion to address his contentions.

6. In Mr. Bailey's amended motion, he contends that he has no ability to provide an affidavit to support his request for an evidentiary hearing. Instead, he relies on photographs of the murder scene, DNA sample cataloging, and DNA testing results to demonstrate the prevalence of Mr. Wright's DNA, as opposed to Mr. Bailey's DNA, throughout the car.

7. In response, the State concedes that Mr. Bailey's amended motion satisfies Rule 41(f)'s specificity requirements. The State focuses its opposition on the latter part of Rule 41(f): which requires that "the allegedly [omitted fact] is necessary to the finding of probable cause." Regarding this requirement, the State maintains that if the Court were to accept everything that Mr. Bailey alleges to be true, he is still not due an evidentiary hearing. According to the State, even if the affiant had recited that Mr. Wright's blood was some, most, or all the DNA recovered from the back seat, the seizure of Mr. Bailey's DNA pursuant to the warrant remained lawful. The State also stresses that the detective's recitation that the police found a 9mm casing in the rear seat should end the analysis.

8.      In *Franks v. Delaware,*[3] the United States Supreme Court examined how to evaluate challenges to allegedly false recitations offered in a probable cause affidavit filed in support of a warrant application.     Here, Mr. Bailey's amended motion implicates what is described as a reverse-*Franks*, as opposed to a *Franks,* situation.     It falls in the reverse-*Franks* category because it alleges a material *omission of fact* rather than a falsely stated fact.[4]   As a baseline for his argument, he focuses on the detective's recitation that the police "processed the interior/exterior of the vehicle and obtained numerous DNA samples from the rear seat where the accused/Marcus Bailey was positioned at the time of the murder."[5] Mr. Bailey contends that when the detective failed to disclose that Mr. Wright's blood was spread throughout the vehicle's rear seats, the affidavit recklessly misled the magistrate into approving a warrant to seize Mr. Bailey's DNA.

9.      Typically, the sufficiency of a search warrant rises or falls on the facts presented within the four corners of the probable cause affidavit that supports the warrant application.[6]   There are limited exceptions to a four corners analyses, however.   They include challenges to the manner of warrant execution.[7]   Other limited exceptions include challenges such as those raised by Mr. Bailey's motion – where a defendant contends that the police obtained a warrant by making false recitations or by recklessly withholding important facts.[8]     In such limited

---

[3] 438 U.S. 154 (1978).
[4] *See State v. Hackendorn*, 2016 WL 266360, at *3 (Del. Super. Jan. 13, 2016) (explaining that a reverse-*Franks* situation arises when omitted information, which is material to a finding of probable cause, is the basis of a challenge to a warrant).
[5] Aff. of Probable Cause ¶ 11.
[6] *See State v. Leonard*, 2023 WL 2595729, at *2 (Del. Super Mar. 22, 2023) ("[I]t is well settled that a challenge to the sufficiency of a warrant for lack of probable cause to support the warrant permits only a four-corners review of the affidavit of probable cause….") (citations omitted).
[7]  *Id.*
[8] *Hackendorn*, 2016 WL 266360, at *3.

circumstances, the Court may expand the record and hold an evidentiary hearing to determine whether a warrant-authorized search was lawful.[9]

10. The Court does not automatically conduct an evidentiary hearing merely because a defendant alleges a falsity or a material omission, however.[10] The defendant bears the burden of persuading the Court to hold an evidentiary hearing.[11] In the context of both *Franks* and reverse-*Franks* challenges, the defendant must provide a substantial showing that such a hearing is appropriate.[12] When doing so, the Court must determine whether the alleged falsity or omission would have made a difference to the reviewing magistrate.[13] In a *Franks* challenge, the Court excises the allegedly false facts to determine if they would make a difference.[14] In a reverse-*Franks* challenge, the Court then hypothetically inserts the omitted facts into the affidavit.[15] If one of those changes would provide for a different outcome, then the defendant meets the threshold necessary to obtain a hearing.[16]

---

[9] *Id.*

[10] *See Franks,* 438 U.S. at 171–172 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."); *see also Hackendorn*, 2016 WL 266360, at *4 ("[A] Frank's or reverse-Frank's hearing is not automatically granted upon request.").

[11] *Hackendorn*, 2016 WL 266360, at *4 (providing that the defendant bears the burden of persuading the Court that an evidentiary hearing is warranted).

[12] *Franks,* 438 U.S. at 155–156.

[13] *Id.* at 156.

[14] *Id.*

[15] *Sisson v. State*, 903 A.2d 288, 300 (Del. 2006).

[16] *See Franks,* 438 U.S. at 171–172 (holding that after removing the allegedly false facts, "if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing."); *see also Hackendorn,* 2016 WL 266360, at *5 (explaining that the defendant had adequately supported his request for a hearing by specifically alleging material omissions which would have caused a magistrate to deny the warrant based on a lack of probable cause).

11. In cases where a reverse-*Franks* challenge progresses to an evidentiary hearing, the burden of proof is by a preponderance of the evidence.[17] There, the defendant must demonstrate that the affiant intentionally, knowingly, or with reckless disregard for the truth, omitted information material to a finding of probable cause.[18]

12. Whether or not to conduct a hearing is a close call in this case. On one hand, Mr. Bailey highlights what is an important omission that a reasonable person would think was material to a finding of probable cause: the alleged victim's blood, and no identified bodily fluid sample of the suspect, was spread across the area from which the police recovered multiple unspecified DNA samples. If extrinsic evidence presented at a hearing were to demonstrate that the police collected *only* those blood samples, that could make a difference regarding the sufficiency of the warrant. On the other hand, the affidavit recites that the police recovered a 9mm casing from the scene. If the evidence presented at a hearing demonstrates that the State took a sample from the 9mm casing, the answer may be different. Here, the affidavit does not reference whether the police swabbed the casing, any other part of the vehicle, or merely the blood residue inside the car.[19] Extrinsic evidence regarding the totality of the DNA recovery efforts prior to the issuance of the warrant on April 4, 2023, must be considered.

---

[17] *Id.* at *3.

[18] *Id.*

[19] The Court recognizes that the materials Mr. Bailey submitted include references to a swab taken from the 9mm casing. That the police swabbed the casing to attempt to recover DNA, however, is not included in the affidavit. The Court is no freer to assume that fact to dispositively deny Mr. Bailey a hearing, than it would be free to assume Mr. Bailey's implications that the only DNA samples taken before the issuance of the warrant were from Mr. Wright's blood. The hearing will cover the totality of the evidence relevant to police efforts to recover DNA from the vehicle. While the Court reserves decision on whether the scope of the hearing should also include the later recovery of the mask in the car allegedly driven by Mr. Bailey around the time of the murder, the parties must be prepared to present evidence regarding

13. Importantly, during the upcoming hearing, the relevant inquires will track the two-part inquiry identified by the Delaware Supreme Court in *Rivera v. State.*[20] The first inquiry requires the Court to determine if the alleged omissions were made with reckless disregard of what a reasonable magistrate or reviewing judge would find important.[21] Such "omissions are made with reckless disregard for the truth [if] an officer recklessly omits facts that any reasonable person would know that a judge would want to know in making a probable cause determination."[22] For that portion of the inquiry, recklessness may be inferred when the omitted information was "clearly critical to the probable cause determination." [23]

14. The second part of the inquiry – materiality – is inextricably intertwined with the first. After hearing extrinsic evidence on the issue, the Court must determine whether the omissions were necessary for a finding of probable cause under the totality of the circumstances.[24] Notably, the two inquiries can be undertaken in reverse order.[25] Furthermore, they could just as easily and appropriately be combined into one inquiry because the subjective component of the first (i.e. knowledge or reckless disregard of what would be important to a

---

that issue as well. If the totality of the evidence is the touchstone for any Fourth Amendment analysis, and the defense justifies opening the record to hear extrinsic evidence, it may be appropriate for the Court to consider all evidence bearing on DNA sampling prior to the warrant application when determining what to hypothetically insert into the warrant. The parties should be prepared to address that issue during the hearing.

[20] 7 A.3d 961, 968–969 (Del. 2010).

[21] *Id.*

[22] *Id.* (internal quotation marks omitted) (quoting Wilson v. Russo, 212 F.3d 781, 783).

[23] *Id.* at 969.

[24] *See Id.* at 969–970 (explaining that to evaluate the materiality of omitted facts, the Court must "reconstruct the affidavit" with the omitted information and consider whether probable cause still exists when viewed under the totality of the circumstances).

[25] *Id.* at 969.

magistrate) becomes intertwined with the second.[26] On balance, the scope of the hearing will examine the totality of the evidence regarding (1) the officer's state of mind when applying for the warrant, and (2) the scope and timing of DNA sampling prior to the application for the warrant. After the Court makes relevant findings of fact, it will evaluate a reconstituted affidavit in light of those additional facts.[27]

15. Because of the limited time available between now and the start of trial, the evidentiary hearing in this matter will be held at **9:30 a.m. on Thursday, April 18, 2024.** If either party has an irreconcilable conflict with that date, they must promptly notify the Court. In such an event, the Court will conduct the hearing after jury selection and before opening statements on the first day of trial, April 22, 2024, so the trial schedule will be left intact.

**WHEREFORE**, after considering Mr. Bailey's amended motion to suppress and the State's response, the Court **GRANTS** Mr. Bailey's motion for a

---

[26] After all, it is the reckless disregard of the materiality of the omission that is examined in the first inquiry. Subjective awareness of a known risk – here the risk being a *material* omission -- can just as easily be recognized as blending the two inquiries into one because you cannot evaluate the first inquiry regarding the officer's state of mind without considering the materiality of the omission examined in the second inquiry. *See Rivera*, 7 A.3d at 969 (recognizing the interrelationship of the inquiries).

[27] One important reason that the Court's decision to conduct a reverse-*Franks* hearing is such a close call is the reference to the fact that a DNA sample was recovered from the 9-mm cartridge in the rear of the vehicle. The existing warrant merely mentions that the recovery of the cartridge's casing (referred to as a "shell casing"). The swabbing and sampling of the casing is unrelated to blood spattering and would add relevant facts to the warrant that the Court will likely also consider. Another set of relevant facts may surround the recovery of the mask allegedly used by Mr. Bailey. The documents Mr. Bailey submitted indicated that the mask was recovered and swabbed *before* the detective applied for the warrant to seize Mr. Bailey's DNA. The extent of the blood spattering, the potential swabbing and testing of the casing, and the testing of the mask all fall outside the current record notwithstanding the materials submitted by the defense as to all three. The Court will consider the totality of the detracting and enhancing evidence on the issue of sample recovery before it decides whether the reconstituted warrant meets the nexus requirement.

reverse-*Franks* hearing. It is appropriate to conduct an evidentiary hearing to apply the two-part inquiry adopted in *Rivera v. State* so that the Court may determine if the seizure of Mr. Bailey's DNA was lawful.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Resident Judge

oc: Prothonotary
sc: Counsel of Record